HEARD, Judge.
This is an action to recover the value of certain interline motor transportation services performed by Ozone Motor Line for Braswell Motor Freight Lines, Inc. Most of the facts have been stipulated to by the parties as follows: Ozone performed certain interline motor transportation services for Braswell over a period from January 1965 to October 1967. In payment for certain invoices rendered by Ozone for the above services, Braswell issued checks to-talling $6,404.09, payable to the order of Ozone. All of the invoices for which the checks were issued were for services properly performed and were in correct amount. The checks issued by Braswell payable to Ozone were altered by A. J. Soldani by typing his name above Ozone Motor Line’s. A. J. Soldani altered, endorsed and cashed the checks while in his employ at Ozone. Each of the checks was received at Ozone’s post office box in New Orleans. Ozone received none of the funds represented by the checks.
Ozone sued Braswell for the $6,404.09 and judgment was rendered for Ozone in this amount. Braswell has perfected a de-volutive appeal from this judgment.
Braswell asserts that Ozone has been paid the $6,404.09 because Ozone’s agent, Soldani, had authority to cash the checks, arguing that when an agent acts within his authority it is the same as the principal acting. Thus, if Soldani had authority to cash checks payable to Ozone then when Soldani cashed the checks, Ozone received payment. This argument is a correct statement of the law, and it remains only to determine whether or not A. J. Soldani had authority to cash the checks.
As stated in Lawrence J. Kern, Inc. v. Panos, La.App., 177 So. 432 (2d Cir. 1937) “[t]he authority of an agent to make or indorse commercial paper for his principal must be express, or reasonably inferred from the nature of the duties intrusted to his performance. Such authority may be inferred or implied where it appears that the line of business the agent is charged with performing necessarily requires that such authority be exercised.” [p. 434]
It cannot be reasonably argued that Soldani had express authority to endorse checks payable to Ozone. The testimony of Mr. and Mrs. Guillory absolutely refutes this. Soldani’s duties with Ozone were varied, consisting of picking up the mail, taking deposits to the bank, investigating damage claims, appearing before the Interstate Commerce Commission and the Public Service Commission and marking ac *648 counts receivable paid. These duties do not imply an authority to endorse checks payable to Ozone. Again as stated in Kern, supra, “[a]n agent authorized to make collections has no implied authority to endorse checks taken in the name of his principal, even if he [has been] expressly authorized to accept checks or notes drawn in favor of his principal, as well as money.” 177 So. 432, 434, quoting with approval from 2 Am.Jur. § 178, p. 142.
Thus, we hold that A. J. Soldani had neither express nor implied authority to endorse checks for his principal. Therefore, A. J. Soldani’s acts of cashing these checks are not imputable to Ozone, and Ozone has not received payment on the debt.
Braswell argues that Ozone clothed Sol-dani with apparent authority to cash checks, and, for this reason Ozone has been paid. This argument is without merit. The evidence discloses no facts indicating authority on the part of the employee to endorse or cash checks, and certainly no communication of any such apparent authority to either the defendant or to the parties who cashed the checks.
Braswell further asserts that plaintiff acquiesced in the endorsement of these checks by his employee by conducting his business in such a way to make it possible for him to do so.
In support of this argument defendant cites Peoples Cotton Oil Company, La. App., 147 So.2d 687 (4th Cir. 1962). This case is inapposite to the instant one for the reason that in Peoples the affairs of the corporation were entrusted to a general manager who was neither a member of the board of directors nor an officer of the corporation. He kept all of the books and records of the corporation, opened all mail, handled all incoming checks and took care of all the corporation’s banking affairs. He had charge of shipments of cotton oil and other products and collected corporation accounts. The court found that the employee had apparent authority to endorse checks and draw drafts, and said:
“ * * * Moreover while the general rule is that implied authority to make and endorse negotiable paper does not arise from the sole fact that an agent has managerial status, an implied authority may arise where it is made to appear that such an agent would be unable to perform all of the duties and responsibilities entrusted to him without such authority. And even in cases where the authority may not be thus implied, if a principal has acquiesced in the practice of an agent to make or endorse paper he will be bound by the agent’s act as fully as though he had expressly authorized it. See 2 Am j. Agency, Sec. 179, page 144.” [147 So.2d 687, 690]
In the instant case Guillory was unaware what the employee was doing.
Defendant further asserts that plaintiff permitted his employee to perpetrate the fraud through carelessness and negligence and thus plaintiff should bear the loss and that plaintiff permitted Sol-dani’s acts to go undiscovered for almost two years with no repudiation or protest, citing Young v. Gretna Trust and Savings Bank, 184 La. 872, 168 So. 85 (1936). In Young an employee forged signatures on checks of the employer and the employer, then sued the bank which cashed the checks. The court held the employer negligent and barred his recovery even though the general rule of the Negotiable Instrument Law, if applied, would have held the bank liable. The rule was applied that “where one or two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed on him who most contributed to it.” This case is not applicable to the instant one for the reason that it deals with special rules governing the relationship between depositor and depository. In the instant case we are dealing with relationship between drawer and payee.
Finding no manifest error in the judgment appealed from, it is affirmed at appellant’s cost.